UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

      MANUEL WONG a/k/a               Chapter 13
      MANUEL BALDEON,           Case No. 1-12-40026-ess

              Debtor.

-------------------------------------------------------------x

MANUEL WONG,

              Plaintiff,           Adv. Pro. No. 1-12-01189-ess

    - against -

GREEN TREE SERVICING, LLC and
MORTGAGE WORLD BANKERS, INC.,

              Defendants.

-------------------------------------------------------------x

## MEMORANDUM DECISION ON THE TRUSTEE'S
## MOTION TO DISMISS THE ADVERSARY PROCEEDING

*Appearances:*

Tara McDevitt, Esq.             Krista M. Preuss, Esq.
Bronson Law Offices PC       Office of the Standing Chapter 13 Trustee
61-43 186th Street            115 Eileen Way (Suite 106)
Fresh Meadows, NY 11365     Syosset, NY 11791
     *Attorneys for the Debtor*          *Attorney for the Chapter 13 Trustee*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion of the Chapter 13 trustee, Marianne DeRosa, to dismiss

the adversary proceeding initiated by Manuel Wong a/k/a Manuel Baldeon, against Green Tree

Servicing, LLC and Mortgage World Bankers, Inc.  By this action, the Debtor seeks to avoid two

junior mortgage liens encumbering his principal residence and to reclassify the underlying claims

as unsecured pursuant to Bankruptcy Code Section 1322(b), which allows for the modification of

secured creditors' rights in a Chapter 13 plan, and Section 506(a), which provides the framework

to determine whether an allowed claim should be classified as secured.

The question posed by the Trustee's motion is whether a debtor who has obtained a

Chapter 7 discharge within the last four years, and is therefore ineligible to receive a discharge in

a subsequent Chapter 13 bankruptcy case, may nevertheless use Section 1322(b) to avoid a junior

mortgage lien and treat the underlying claim as unsecured in a Chapter 13 plan.[1]

The defendants in this action are Green Tree Servicing, LLC ("Green Tree") and

Mortgage World Bankers, Inc. ("Mortgage World").  Green Tree and Mortgage World each holds

a junior mortgage lien on the Debtor's principal residence.

It is well settled that a Chapter 13 debtor may not avoid the unsecured portion of a

partially secured residential mortgage lien on the debtor's principal residence and treat the

underlying claim as secured only to the extent of the value of the collateral.  *See Nobelman v.*

*American Sav. Bank*, 508 U.S. 324, 332 (1993).  Similarly, it is well settled in the Second Circuit

that a Chapter 13 debtor may avoid a wholly unsecured junior mortgage lien and treat the

---

[1]  The Debtor also seeks to avoid these liens pursuant to Bankruptcy Code Section 506(d).  For
the reasons set forth herein, the Court does not address this question at this time.

underlying claim as unsecured in a Chapter 13 plan.  *See Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 127 (2d Cir. 2001).

The issue presented here has divided courts within this District and across the country. *Compare In re Miller*, 462 B.R. 421, 434-35 (Bankr. E.D.N.Y. 2011) (Trust, J.) (holding that a Chapter 13 debtor who may not receive a discharge pursuant to Section 1328(f) is nevertheless able to avoid a wholly unsecured junior mortgage lien in a Chapter 13 plan that treats the underlying claim as a general unsecured claim); *with Orkwis v. MERS (In re Orkwis*), 457 B.R. 243, 252 (Bankr. E.D.N.Y. 2011) (Grossman, J.) (holding that a Chapter 13 debtor may avoid a wholly unsecured junior mortgage lien in a Chapter 13 plan only upon the completion of plan payments and the entry of a discharge).

Many courts have found that a Chapter 13 debtor who is ineligible for discharge may nevertheless modify the rights of a wholly unsecured junior mortgagee, reasoning that the underlying claims are valued as unsecured pursuant to Section 506(a) and that the junior mortgagee's unsecured liens are not entitled to the protections in Section 1322(b) or Section 1325(a)(5).  As one court in this District concluded, consistent with the Second Circuit's holding in *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001), "because the junior lien is wholly unsecured under § 506(a), the anti-modification prohibition of § 1322(b)(2) does not apply, and the treatment provisions of § 1325(a)(5) applicable to secured claims do not apply."  *In re Miller*, 462 B.R. at 434.

Another court in this Circuit similarly held that "under the Second Circuit law – because, obviously, we're all governed by the *Pond* case – 1325(a)(5) doesn't kick in. . . . and the *Pond* rationale is consistent with not having it kick in."  Transcript of Confirmation Hearing and

Motion To Avoid Lien at 4, *In re Maria Sands*, Case No. 12-23241-RDD (S.D.N.Y. Sept. 12, 2012).

Courts in other circuits have joined the growing consensus of opinion that in a Chapter 13 bankruptcy case in which the debtor is ineligible for a discharge, the rights of "[a] creditor who [does] not hold a secured claim pursuant to [Section] 506(a) . . . . are subject to modification through the chapter 13 plan – pursuant to Section 1322(b)(2) – and [such creditors] do not qualify to be treated as secured creditors for purposes of Section 1325(a)(5)." *In re Okosisi*, 451 B.R. 90, 98 (Bankr. D. Nev. 2011) (quotation omitted).

And as one court observed, this conclusion is consistent with "the majority view" espoused by at least "five other Courts of Appeals and two Bankruptcy Appellate Panels" "that a claim for which there is no value in the collateral is a completely unsecured claim for valuation and Chapter 13 plan purposes." *In re Frazier*, 448 B.R. 803, 810 n.5 (Bankr. E.D. Cal. 2011), *aff'd*, 469 B.R. 889 (E.D. Cal. 2012).

Other courts have reached the opposite conclusion, finding that lien avoidance becomes permanent only upon the entry of a discharge, so that a debtor who is ineligible to receive a discharge may not avoid a wholly unsecured junior lien or treat the underlying claim as unsecured in the plan. *See In re Gerardin*, 447 B.R. 342, 349 (Bankr. S.D. Fla. 2011) (reasoning that "a debtor's inability to receive a discharge in a 'Chapter 20' case prevents a debtor from stripping wholly unsecured liens in a Chapter 13 plan as the actual strip off or lien avoidance only occurs at discharge"); *In re Fenn*, 428 B.R. 494, 500 (Bankr. N.D. Ill. 2010) (stating that when "a debtor is not eligible for a § 1328 discharge, allowing plan modifications to be permanent, in this case – allowing a permanent strip-off of the junior mortgage lien – after the

end of the plan results in a de facto discharge, a benefit to which the Debtors herein are not

entitled"); *In re Jarvis*, 390 B.R. 600, 605-06 (Bankr. C.D. Ill. 2008) (holding that "[a]

no-discharge Chapter 13 case may not, however, result in a permanent modification of a

creditor's rights where such modification has traditionally only been achieved through a

discharge and where such modification is not binding if a case is dismissed or converted").

And some courts permit a debtor who is ineligible to receive a discharge to modify the

rights of the creditor over the life of the plan, but reinstate the creditor's original rights upon plan

completion and the closing of the case.  This third approach, like the second approach, holds that

discharge is necessary in order permanently to avoid a lien.  *See In re Orkwis*, 457 B.R. at 250

(holding that "regardless of the treatment afforded in a Chapter 13 plan, a secured creditor retains

its lien until the entry of the discharge"); *In re Trujillo*, 2010 WL 4669095, at *2 (Bankr. M.D.

Fla. Nov. 10, 2010) (holding that "[w]here a debtor is ineligible to receive a discharge in a

Chapter 13, any modifications to the creditor's rights are not permanent and have no binding

effect once the plan ends"); *In re Lilly*, 378 B.R. 232, 236 (Bankr. C.D. Ill. 2007) (holding that

"[w]here a debtor does not receive a discharge, however, any modifications to a creditor's rights

imposed in the plan are not permanent and have no binding effect once the term of the plan

ends").

Here, the Trustee argues that regardless of the value of the collateral or the extent to

which a junior mortgagee's claim is secured, the liens may not be avoided pursuant to Sections

506(a) and 506(d) because the Defendants' underlying claims are secured by an interest in the

Debtor's principal residence.  The Trustee contends that lien retention in a Chapter 13 case is

governed by Section 1325(a)(5), which requires a lien to remain in place until the underlying

4

debt is either fully satisfied or discharged, unless the secured creditor consents to other treatment or the debtor surrenders the collateral.

The Trustee also argues that, as the Supreme Court has observed, Congress intended for "liens [to] pass through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. at 417. And she notes that under *In re Orkwis*, 457 B.R. 243 (Bankr. E.D.N.Y. 2011), a decision in this District, "[b]ecause § 1325(a)(5) governs lien retention in Chapter 13 cases, a discharge is required pursuant to subsection (B)(i)(I) before the lien is removed." *In re Orkwis*, 457 B.R. at 250. For these reasons, the Trustee moves to dismiss this adversary proceeding for failure to state a claim upon which relief may be granted.

The Debtor responds that Section 1322(b)'s antimodification provision does not apply because there is insufficient equity in the Debtor's principal residence to support a finding that the Defendants' claims are even partially secured under Section 506(a). Rather, the Debtor argues that under Section 506(a), the Defendants' liens are wholly unsecured and cannot be "allowed secured claims" within the scope of the antimodification provision. The Debtor contends that because Section 1328(f) precludes only the entry of an order of discharge, it is not a bar to the modification of a wholly unsecured junior lienholder's rights in the plan.

The Debtor also urges that in the Second Circuit, a debtor may modify the rights of a wholly unsecured junior mortgage lienholder by avoiding the unsecured lien and treating the underlying claim as unsecured in the plan. *In re Pond*, 252 F.3d at 126. The Debtor argues that eligibility to be a Chapter 13 debtor is not limited to those debtors who may receive a discharge upon completion of the case. And the Debtor notes that, as the court found in *In re Miller*, 462 B.R. 421 (Bankr. E.D.N.Y. 2011), neither Section 1325(a) "nor any other provisions of chapter

5

13 provides that a plan may only be confirmed for a debtor who is eligible to receive a

discharge." *In re Miller*, 462 B.R. at 431.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(A), (K), and (L), and 1334(b), and the Standing Order of Reference in effect in the

Eastern District of New York.

### Procedural History

The Debtor filed for relief under Chapter 7 on December 31, 2010, and received a

discharge in that case on April 5, 2011.  The Debtor filed for relief under Chapter 13 on January

3, 2012.  It is undisputed that, pursuant to Bankruptcy Code Section 1328(f), the Debtor may not

receive a discharge in this case because he received a Chapter 7 discharge within the four years

prior to filing the present case.

On June 8, 2012, the Debtor commenced this adversary proceeding to avoid the liens that

the Defendants hold against his principal residence (the "Property") pursuant to Sections 506(a),

506(d), and 1322(b).  A response to the Complaint was due on August 15, 2012.  The Defendants

have not responded to the Complaint or otherwise appeared in this action.

On May 31, 2012, the Debtor filed an amended Chapter 13 plan that notes this adversary

proceeding in connection with the plan's treatment of the Defendants' claims.  The plan treats the

Defendants' claims as unsecured, and relies on this action to classify the claims as wholly

unsecured and to avoid the unsecured liens.  This classification is significant because under the

Debtor's plan, the proposed distributions are not sufficient to pay the Defendants' claims in full.

*See* 11 U.S.C. § 1325(a)(5)(B)(i)-(iii).

On July 23, 2012, the Trustee filed this Motion to Dismiss. She argues that Section 506(d) may not be used to avoid liens that are classified as wholly unsecured under Section 506(a), and that since the Debtor is not eligible for a discharge, he may not otherwise avoid a lien in his Chapter 13 case. On August 2, 2012, the Debtor filed opposition to the Motion to Dismiss. At a hearing on August 30, 2012, the Court requested supplemental briefing on the issue of whether the Debtor's ineligibility for discharge precluded modifying the rights of secured creditors pursuant to Section 1322(b).

On September 7, 2012, the Trustee filed a Memorandum of Law in Support of the Motion to Dismiss, and on October 17, 2012, the Debtor filed a Memorandum of Law in Opposition to the Motion to Dismiss. On October 22, 2012, the Court held a hearing on the Motion to Dismiss at which the Trustee and the Debtor appeared and were heard, the Defendants did not appear, and the Court adjourned the hearing to January 14, 2013, for supplemental oral argument. On January 14, 2013, the Trustee and the Debtor appeared and were heard, the Defendants did not appear, and the Court reserved decision.

## Background

The material facts are not in dispute. The Debtor's principal residence is a two-family dwelling located in this District, and is valued at $350,000. The Debtor derives $1,700 in monthly income from the Property, a figure that has remained constant since the Debtor's Chapter 7 filing in 2010.

There are three secured creditors with an interest in the Property. HSBC Mortgage Corp. USA ("HSBC") has a first priority lien securing a claim for $393,597. The Debtor and HSBC are currently participating in the Court's Loss Mitigation Program. Green Tree has a second

priority lien securing a claim for $198,511, and Mortgage World has a junior lien securing a claim for $25,082.

## Discussion

The question presented by the Trustee's Motion to Dismiss is whether, pursuant to Bankruptcy Code Sections 506(a) and 1322(b), a debtor who is ineligible for a Chapter 13 discharge may permanently modify a wholly unsecured junior mortgagee's rights by avoiding the mortgagee's lien and reclassifying the mortgagee's claim as unsecured.

In general, the "first step in interpreting a statute is to determine whether the language at issue had a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). As the Supreme Court has observed, "[o]ur inquiry must cease if the statutory language is unambiguous and the 'statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (stating that "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete'").

*Whether the Debtor Is Eligible for Chapter 13 Relief*

In determining the nature and extent of the relief that may be available to a debtor under the Bankruptcy Code, the starting point is the language of the statute that governs eligibility. Section 109 sets forth the eligibility requirements for an entity seeking relief under Title 11. *See* 11 U.S.C. § 109. Sections 109(a), (e), and (g) apply to individuals seeking relief in Chapter 13.

At the outset, Section 109 does not require that a debtor be eligible for a discharge in order to seek relief under Chapter 13. And "it is significant that § 109(a), (e), and (g), which sets

8

forth the eligibility requirements for chapter 13, does not condition a debtor's eligibility for relief under chapter 13 on the debtor's eligibility for a discharge. Nor does § 109 preclude chapter 13 relief to a debtor that has recently received a discharge in chapter 7." *In re Tran*, 431 B.R. 230, 235 (Bankr. N.D. Cal. 2010), *aff'd*, 814 F. Supp. 2d 946 (N.D. Cal. 2011). As the Supreme Court has observed, "[s]o long as a debtor meets the eligibility requirements for relief under Chapter 13, he may submit for the bankruptcy court's confirmation a plan that 'modif[ies] the rights of holders of secured claims . . . or . . . unsecured claims,' and that 'provide[s] for the payment of all or any part of any [allowed] claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991) (quoting 11 U.S.C. § 1322(b)(2), (6)).

Here, since the Debtor is an individual person with regular income and does not have debts in excess of the statutory limits, he is eligible to seek relief under Chapter 13 and to use the tools of that chapter to restructure his debt.

*Whether the Defendants Are Holders of Allowed Claims*

Section 101(5) defines a claim as a "right to payment." 11 U.S.C. § 101(5). Section 502(b) states that a court "shall allow" a claim that is enforceable against the property of the debtor. 11 U.S.C. § 502(b).

In considering whether a lien that is unaffected by a Chapter 7 discharge is a claim for the purposes of a subsequent Chapter 13 filing, the Supreme Court held that "a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)" because a mortgage interest is analogous to a right to payment against the property of the debtor. *Johnson*, 501 U.S. at 84-85. The Supreme Court further found:

[A] court must allow the claim if it is enforceable against *either* the debtor *or* his

9

property.  Thus, § 502(b)(1) contemplates circumstances in which a "claim," like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property.

*Johnson*, 501 U.S. at 85.

Here, the Defendants are holders of claims under Section 101(5) because they "still retain[] a 'right to payment' in the form of [their] right to the proceeds from the sale of the debtor's property."  *Johnson*, 501 U.S. at 84.

*Whether the Defendants' Claims Are Allowed Secured Claims Under Bankruptcy Code Section 506(a)*

Bankruptcy Code Section 506(a) provides the framework to determine whether an allowed claim under Section 502 should be classified as secured.  The first step in answering this question is to value the claim under Section 506(a).

Valuation is significant because it determines the classification of the claim in the bankruptcy case.  Outside of bankruptcy, the holder of a valid security interest may be considered a secured creditor regardless of whether the collateral has sufficient value to secure a portion of the creditor's lien.  "However, in bankruptcy, a creditor is only a secured creditor if its claim is so classified.  If the claim is not so classified, the once-secured creditor will have an unsecured claim and will thus be an unsecured creditor for purposes of the bankruptcy case."  *In re Okosisi*, 451 B.R. at 93.

Section 506(a)(1) states:

[A]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). This means that an allowed claim "is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239 (1989). Viewed another way, Section 506(a) provides "a judicial valuation of the collateral to determine the status of the [creditor]'s secured claim." *Nobelman*, 508 U.S. at 328. *See Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 961 (1997) (stating that "[t]he first sentence [of § 506(a)], in its entirety, tells us that . . . the secured portion of [a] claim [is] limited to the value of the collateral").

Relying on *Ron Pair* and *Rash*, the Debtor argues that since the collateral does not have enough value to secure even a portion of the Defendants' liens, the liens are wholly unsecured and the claims should be classified accordingly.

The Trustee does not dispute the value of the Property or the conclusion that the first mortgage exceeds the value of the collateral. Rather, the Trustee argues that the Defendants' claims should nonetheless be classified as secured in the Debtor's Chapter 13 plan because the liens are secured by an interest in the Debtor's principal residence.

The Trustee argues that, as the Supreme Court indicated in *Johnson*, the Defendants have a right to payment that is based on an interest in the Debtor's property. *Johnson*, 501 U.S. at 84. As a consequence, she argues the Defendants' claims come within Section 1322(b)'s antimodification provision because they are secured by the Debtor's principal residence. That is, she states that the claims should be treated as secured based on the *type* of collateral, as opposed to the *value* of the collateral, securing the claim.

The Trustee also argues that the Defendants' claims should be treated as secured because a valuation pursuant to Section 506(a)(1) must be undertaken in conjunction with Section

11

1325(a)(5), which identifies the requirements of plan confirmation and the specific requirements for the treatment of a secured claim.

The question of how to value a junior mortgage lien for purposes of Section 506(a) was addressed by the Second Circuit in *In re Pond*. *In re Pond*, 252 F.3d at 126-27. The court considered whether the claim of a mortgagee holding a junior lien on the debtor's principal residence was secured pursuant to Section 506(a). *In re Pond*, 252 F.3d at 127. The property was valued at $69,000 and encumbered by four liens, and the total value of the three senior liens was $70,500. *In re Pond*, 252 F.3d at 123-24. That is, there was no equity in the property to secure the most junior of the liens. The court held that the "defendants' lien in plaintiffs' residential property is not 'secured' under Section 506(a) because there is insufficient equity in the property to cover any portion of that lien." *In re Pond*, 252 F.3d at 127.

Applying the Second Circuit's reasoning in *In re Pond* to this case, the Defendants' claims should be classified as unsecured pursuant to Section 506(a) because the value of the Property is less than the amount of the first priority lien. The fair market value of the Property is $350,000, which is less than the value of the claim of $393,597 secured by the first priority lien. "Section 506(a) provides that an allowed claim secured by a lien on the debtor's property 'is a secured claim to the extent of the value of [the] property'; to the extent the claim exceeds the value of the property, it 'is an unsecured claim.'" *Nobelman*, 508 U.S. at 328. As a consequence, any liens that are junior to this first priority lien, including the Defendants' liens, are wholly unsecured.

*Whether the Liens Securing the Defendants' Claims Are Void Under Bankruptcy Code Section 506(d)*

Bankruptcy Code Section 506(d) states that when a lien "secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d). In *Dewsnup*, the Supreme Court considered whether a Chapter 7 debtor could use Section 506(d) to avoid the unsecured portion of a secured creditor's lien. The Court held:

> [T]he words "allowed secured claim" in § 506(d) . . . . should be read term-by-term to refer to any claim that is, *first*, *allowed*, and, *second*, *secured*. Because there is no question that the claim at issue here has been "allowed" pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured.

*Dewsnup*, 502 U.S. at 415 (emphasis added). The Supreme Court held that absent clear Congressional intent, there was no reason to "depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Dewsnup*, 502 U.S. at 417.

Courts considering the application of *Dewsnup* in the context of Chapter 13 have similarly concluded that Section 506(d) does not provide an independent basis for lien avoidance unless the claim has been disallowed. *See, e.g.*, *Frazier v. Real Time Resolutions, Inc. (In re Frazier)*, 469 B.R. 889, 898 (E.D. Cal. 2012); *In re Okosisi*, 451 B.R. at 99 n.9; *In re Hill*, 440 B.R. 176, 181 (Bankr. S.D. Cal. 2010). Where a claim is otherwise allowed, using Section 506(d) to avoid the lien securing that claim "'would run afoul'" of the Supreme Court's holding in *Dewsnup*. *In re Okosisi*, 451 B.R. at 99 n.9 (quoting *In re Hill*, 440 B.R. at 181).

The Trustee argues that the Defendants' claims are both allowed and secured, and accordingly the liens securing those claims may not be avoided pursuant to Section 506(d).

The Debtor responds that *Dewsnup* should be narrowly construed and applied only to partially, as opposed to wholly, unsecured claims. The Debtor also argues that under *Nobelman*,

13

if the claims may be valued as unsecured under Section 506(a), then this Court may avoid the liens securing those claims under Section 506(d).

Viewed in the context of Chapter 13 and other Bankruptcy Code provisions, Section 506(d) does not provide an independent basis to avoid a lien, even where there is no value in the collateral to cover the lien, unless the claim secured by that lien has been separately disallowed under Section 502. Bankruptcy Code Section 103(a) provides that Chapter 5, including Section 506, applies to both Chapter 7 and Chapter 13. As a consequence, the limitation on the application of Section 506(d) should also apply to both chapters. *In re Hill*, 440 B.R. at 181.

In addition, Chapter 13 provides a separate mechanism for lien avoidance, through Sections 1322 and 1325. Applying Section 506(d) to the same end would make those sections redundant. Such a result is generally disfavored. As the Second Circuit has observed, "'[a]s a general rule, a court should not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous.'" *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1408 (2d Cir. 1985) (quoting *Zimmerman v. North American Signal Co.*, 704 F.2d 347, 353 (7th Cir. 1983)).

Finally, *Nobelman* does not address or make reference to Section 506(d). *In re Hill*, 440 B.R. at 181. Rather, it prohibits lien avoidance under Section 1322(b)(2) with respect to a partially secured claim secured by an interest in real property that is the debtor's principal residence. *Nobelman*, 508 U.S. at 327-32. Accordingly, *Nobelman* does not alter the requirement set forth in *Dewsnup* that for a lien to be avoided under Section 506(d), the claim

must be neither allowed nor secured.  *In re Hill*, 440 B.R. at 181.[2]

*Whether the Debtor May Avoid the Liens Securing the Defendants' Claims Under Bankruptcy Code Section 1322(b)*

Bankruptcy Code Section 1322 sets forth the necessary elements of a Chapter 13 plan, and describes what the plan may achieve for the debtor in the bankruptcy process.  Section 1322(b) states:

> [T]he plan may . . . (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .

11 U.S.C. § 1322(b)(2).  That is, Section 1322(b)(2) permits a debtor to modify certain rights of secured and unsecured creditors, but its antimodification provision prevents a debtor from modifying the rights of a mortgagee holding a claim that is secured by a lien on the principal residence of the debtor.

In *In re Pond*, the Second Circuit addressed whether a debtor may use Section 1322(b) to modify the rights of a wholly unsecured junior mortgage lienholder by voiding the wholly unsecured lien and treating the claim as a general unsecured claim.  *In re Pond*, 252 F.3d at 127. The Second Circuit found:

> [T]he antimodification exception of Section 1322(b)(2) protects a creditor's rights in a mortgage lien only where the debtor's residence retains enough value – after accounting for other encumbrances that have priority over the lien – so that the lien is at least partially secured under Section 506(a) . . . [accordingly,] a wholly

---

[2]  While it appears that the Debtor's second cause of action may be legally insufficient, the Court declines to dismiss that cause of action at this time.  To date, there has been no discovery in this adversary proceeding, no objections to the Green Tree and Mortgage World claims have been filed, and the claims allowance process has not yet concluded.  It is possible that as this case progresses, the record may show that the claims should be disallowed.  Accordingly, the Court finds that it is premature to dismiss the second cause of action.

> unsecured claim, as defined under Section 506(a), is not protected under the
> antimodification exception . . . .

*In re Pond*, 252 F.3d at 126.

The court next considered "whether defendants' [unsecured] lien falls within the antimodification exception of Section 1322(b)(2) for claims 'secured only by a security interest in . . . the debtor's principal residence,'" and concluded that "the antimodification exception is triggered only where there is sufficient value in the underlying collateral to cover some portion of a creditor's claim." *In re Pond*, 252 F.3d at 125-26. That is, where there is no value in the collateral to cover the claim, the prohibition of the antimodification provision does not apply.

This rule is consistent with the Supreme Court's reasoning in *Nobelman*, where the Court concluded that Section 1322(b)(2)'s antimodification provision was triggered when a portion of a lien was secured by equity in the debtor's principal residence. *Nobelman*, 508 U.S. at 329, 332. And it is also consistent with the reasoning of those Courts of Appeals and the two Bankruptcy Appellate Panels that have considered the issue.

For example, in *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002), the Ninth Circuit held that "[i]n order to give effect to the definitions of secured and unsecured claims under § 506(a), we must conclude that the rights of a creditor holding only an unsecured claim may be modified under § 1322(b)(2)." *Zimmer*, 313 F.3d at 1227.

And in *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002), the Sixth Circuit held that "[i]f a claimant's lien on the debtor's homestead has no value at all . . . the claimant holds an 'unsecured claim' and the claimant's contractual rights are subject to modification by the plan." *In re Lane*, 280 F.3d at 669. The court observed:

> To interpret § 1322(b)(2) otherwise, we believe, would be to subvert the text of
> the code. Section 1322(b)(2) says, without qualification and in the plainest of
> English, that a Chapter 13 plan "may" modify the rights "of holders of unsecured
> claims." For us to hold that the plan may not modify the rights of such a
> claimholder would be to thumb our noses at Congress' carefully chosen words.

*In re Lane*, 280 F.3d at 668. *See Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357,

1360 (11th Cir. 2000) (holding that wholly unsecured claims are not protected from modification

under Section 1322(b) because any other holding "would vitiate the *Nobelman* Court's

pronouncement that '[debtors] were correct in looking to § 506(a) for a judicial valuation of the

collateral to determine the status of the bank's secured claim'" (quoting *Nobelman*, 508 U.S. at

328)); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 295 (5th Cir.

2000) (finding legislative and policy support for the view that "the Bankruptcy Code does not

permit a wholly undersecured lienholder to rely upon the antimodification protections afforded

mortgagees whose secured interest in the homestead is supported by at least some value");

*McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 612 (3d Cir. 2000) (concluding

that "[i]f a mortgage holder's claim is wholly unsecured, then after the [Section 506(a)] valuation

. . . the bank is not in any respect a holder of a claim secured by the debtor's residence. The bank

simply has an unsecured claim and the antimodification clause does not apply"); *Griffey v. U.S.

Bank (In re Griffey)*, 335 B.R. 166, 170 (B.A.P. 10th Cir. 2005) (stating that "we agree with the

majority of courts that the antimodification clause of § 1322(b)(2) does not apply to the holder of

a wholly unsecured claim"); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 840 (B.A.P. 1st

Cir. 2000) (holding that "[p]ursuant to § 506(a) and § 1322(b)(2), and notwithstanding the

antimodification provision in the latter, Chapter 13 plans may void residential real property liens

that are wholly unsecured").

Here, the record shows that the value of the collateral is less than the claim secured by the first priority lien.  As a consequence, absent some other impediment in the Bankruptcy Code, the Debtor may use Bankruptcy Code Section 1322(b)(2) to avoid the Defendants' liens, and may treat the Defendants' claims as unsecured in his Chapter 13 plan.

*Whether Section 1325(a)(5) Prevents the Debtor from Classifying the Defendants' Claims as Unsecured and Avoiding the Defendants' Liens Because He May Not Receive a Discharge*

Bankruptcy Code Section 1325 lays out the road map to confirmation of a Chapter 13 plan.  Section 1325(a)(5)(B) provides that the holder of a secured claim retains the lien securing the claim until the mortgage is satisfied or the debtor receives a discharge, whichever comes first.  *See* 11 U.S.C. § 1325(a)(5)(B)(i)(I).  But if the claim is unsecured pursuant to Section 506(a) because the claimant's lien has no value and the debtor is not eligible for a discharge, courts disagree on whether Section 1325(a)(5) applies.

Many courts considering this question have concluded that because Section 1325(a)(5) does not apply to unsecured claims, such claims lie outside the rule that the only way to avoid a lien is through the satisfaction of the debt or the entry of a discharge.

For example, in this District, Judge Trust found:

> If wholly unsecured, the mortgage debt claim would not need to be treated as a secured claim under §§ 1322(b)(2) and 1325(a)(5), but would need to be treated as an unsecured claim in accordance with § 1325(b)(1).  As an unsecured claim, the mortgage lien would not remain in place until discharge under § 1325(a)(5)(B)(i)(I), because the unsecured claim is not a secured claim for purposes of confirmation of the debtor's chapter 13 plan, and, therefore, § 1325(a)(5) is not implicated.

*In re Miller*, 462 B.R. at 430.  And in *In re Frazier*, 448 B.R. 803 (Bankr. E.D. Cal. 2011), the bankruptcy court stated that if "there is no value in the collateral to secure the claim, then [the

creditor] does not hold a secured claim and therefore does not have a basis for asserting rights under 11 U.S.C. § 1325(a)(5)." *In re Frazier*, 448 B.R. at 811.

Similarly, in *In re Okosisi*, 451 B.R. 90 (Bankr. D. Nev. 2011), the court observed that a "creditor who [does] not hold a secured claim pursuant to [Section] 506(a) does not have the right to other benefits of secured status in the bankruptcy proceeding." *In re Okosisi*, 451 B.R. 90, 98 (Bankr. D. Nev. 2011) (quotation omitted).

And in *In re Hill*, 440 B.R. 183 (Bankr. S.D. Cal. 2010), the bankruptcy court applied "[c]ontrolling Ninth Circuit precedent" and concluded that a lien that was unsecured under Section 506(a) was also not a secured claim with respect to Sections 1322(b) and 1325(a). *In re Hill*, 440 B.R. at 183 (holding that in order to "remain true to the holding of *Zimmer*, [the] unsecured claim cannot logically be treated differently under § 1325 than it is treated under § 1322").

Other courts considering this issue have followed a different path. These courts conclude that regardless of whether there is value in the collateral to secure the claim, the holder of a secured claim retains its lien until the entry of a discharge or full satisfaction of the debt.

For example, and also in this District, Judge Grossman concluded that a creditor's "lien is not removed until entry of the debtor's discharge." *In re Orkwis*, 457 B.R. at 250. The court reasoned that Bankruptcy Code Sections 1325(a)(5)(B)(i)(I) and (II), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, "clarified that, regardless of the treatment afforded in a Chapter 13 plan, a secured creditor retains its lien until the entry of the discharge." *In re Orkwis*, 457 B.R. at 250. The court also observed that the Second Circuit's decision in *In re Pond* did not require a different result because "[t]he Second Circuit was not

19

called on to determine when lien avoidance could take place in a Chapter 13 case, but only to decide whether it could take place at all." *In re Orkwis*, 457 B.R. at 251.

Similarly, in *In re Gerardin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011), the bankruptcy court found that "[a]llowing a strip off of a junior lien without a discharge or payment of the debt would result in a *de facto* discharge, a benefit to which the Debtors herein are not entitled." *In re Gerardin*, 447 B.R. at 350. There, the court concluded that the antimodification provision of Section 1325(a)(5) required the lien to remain in place until satisfaction of the debt or discharge, and that Section 506(a) was applicable only to the extent that it "determines the amount of funds a plan has to provide for the payment of a secured claim; it does not by its terms or operation disallow claims." *In re Gerardin*, 447 B.R. at 350.

The Trustee argues that the value of the lien is not relevant to whether the claim is secured. Rather, she urges that because the Defendants' claims are secured by an interest in the Debtor's principal residence, the claim is secured and Section 1325(a)(5) applies. As a consequence, she states, this Court should follow those courts concluding that only "the lien-avoiding effect of the confirmed plan is established at confirmation, actual lien avoidance is contingent upon the debtor completing the plan and receiving a discharge." *In re Jarvis*, 390 B.R. 600, 604 (Bankr. C.D. Ill. 2008) (quotation omitted).

The Trustee also argues that permitting a debtor who is not eligible for a discharge to avoid a lien would contravene the policy objectives reflected in the Bankruptcy Code and Section 1325(a), because that section was crafted specifically to ensure that a lien would remain in place until payment of the debt or discharge. *See In re Fenn*, 428 B.R. 494, 503-04 (Bankr. N.D. Ill. 2010).

The Debtor responds that Section 1325(a)(5) is inapplicable because these claims are unsecured pursuant to Section 506(a).  The Debtor also argues that the phrase "allowed secured claim" in Section 1325(a)(5) should be interpreted "by reference to the bifurcation of claims into secured claims and unsecured claims by § 506(a)."  *Harmon v. United States ex rel. FMHA*, 101 F.3d 574, 583 (8th Cir. 1996) (interpreting the phrase "allowed secured claim" in the context of Section 1225(a)).  That is, "allowed secured claim" refers to a claim that is secured under Section 506(a), and not merely to a claim that is secured under applicable non-bankruptcy law.  *See Harmon*, 101 F.3d at 583.

This Court joins the growing consensus of courts holding that Section 1325(a)(5) does not apply to a claim that is unsecured pursuant to Section 506(a), for several reasons.

First, under *In re Pond*, "a mortgage debt claim for which there is no collateral value is not a secured claim entitled to protection of the anti-modification provisions of § 1322(b)(2)."  *In re Miller*, 462 B.R. at 430.  *See Pond*, 252 F.3d at 127.  Because such a claim is unsecured with respect to Section 1322(b)(2), it follows that it is not an "allowed secured claim" with respect to Section 1325(a)(5).  *In re Miller*, 462 B.R. at 430.  As one court in this Circuit noted, "under the Second Circuit law – because, obviously, we're all governed by the *Pond* case – 1325(a)(5) doesn't kick in. . . . and the *Pond* rationale is consistent with not having it kick in."  Transcript of Confirmation Hearing and Motion To Avoid Lien at 4, *In re Maria Sands*, Case No. 12-23241-RDD (S.D.N.Y. Sept. 12, 2012).

Second, this reading of *In re Pond* is consistent with the application of similar case law in other circuits.  For example, in *In re Frazier*, the bankruptcy court concluded that "[a]s directed by the Ninth Circuit Court of Appeals in *In re Zimmer*, if there is no value in the collateral to

secure the claim, then [the creditor] does not hold a secured claim and therefore does not have a

basis for asserting rights under 11 U.S.C. § 1325(a)(5)." *In re Frazier*, 448 B.R. at 811. *See In

re Okosisi*, 451 B.R. at 97-98 (holding that "[u]nder *Nobelman* and *Zimmer* . . . when a creditor

is wholly unsecured after application of Section 506(a), the creditor has only an unsecured claim

for purposes of Section 1322(b)(2). The creditor is not the holder of a secured claim, and as

such, Section 1325(a)(5) . . . does not apply"); *In re Hill*, 440 B.R. at 183 (applying the Ninth

Circuit's holding in *Zimmer*, and concluding that a lien that is unsecured under Sections 506(a)

and 1322(b) must also be unsecured under Section 1325(a)).

Third, as argued by the Debtor, concluding that a claim which is not secured for the

purposes of Section 1322(b)(2) is similarly not an "allowed secured claim" with respect to

Section 1325(a)(5) is also consistent with the Eighth Circuit's interpretation of "allowed secured

claim" in the context of Section 1225(a)(5), which also uses that phrase. *Harmon*, 101 F.3d at

583. *In re Miller*, 462 B.R. at 430. That is, "'allowed secured claim' in § 1225(a)(5), which is

language identical to § 1325(a)(5) . . . 'must be interpreted by reference to the bifurcation of

claims into secured and unsecured claims by § 506(a).'" *In re Miller*, 462 B.R. at 430 (quoting

*Harmon*, 101 F.3d at 583).

Here, the Defendants' claims are wholly unsecured pursuant to Section 506(a). Under *In

re Pond*, the Defendants' claims are unsecured with respect to Section 1322(b)(2). Thus, the

requirements of Sections 1325(a)(5)(B)(i)(I)(aa) and (bb) that a lien remain in effect until full

satisfaction or discharge do not apply because the claims are unsecured for the purpose of plan

confirmation.

Based on the entire record, this Court concludes that the Defendants' claims are

unsecured under Section 506(a) and are also therefore unsecured with respect to Sections 1322(b)(2) and 1325(a)(5).  Accordingly, Section 1325(a)(5) does not prevent the Debtor from confirming a plan that provides for the avoidance of the liens securing the Defendants' claims pursuant to Section 1322(b)(2).

The Court has considered all of the other arguments advanced by the Trustee and concludes that they are not persuasive.

### Conclusion

Based on the entire record, and for the reasons stated herein, the Court finds that the Debtor may use Bankruptcy Code Section 1322(b) to avoid the wholly unsecured junior mortgage liens held by Green Tree Servicing, LLC and Mortgage World Bankers, Inc. and treat the underlying claims as unsecured in his Chapter 13 plan.

Accordingly, the Trustee's Motion to Dismiss is denied.  An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**March 14, 2013**

Elizabeth S. Stong
**Elizabeth S. Stong**
**United States Bankruptcy Judge**